UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/6/2025
```

WILLIAM GOTTLIEB MANAGEMENT
CO., LLC,

               Plaintiff,

   -against-

ALLAN CARLIN,

              Defendant.

20-CV-8907 (VM) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

      Plaintiff William Gottlieb Management Co. (WGM), a real estate company, retained defendant Allan Carlin, a lawyer, to perform legal services. *See* Compl. (Dkt. 1) ¶ 8. In 2017, during the course of the engagement, WGM provided Carlin with "a user login and access to the WGM Dropbox Professional Account" (the WGM Dropbox), including various shared folders. *Id*. The WGM Dropbox "is stored in 'the Cloud.'" *Id*. ¶ 9. On October 24, 2018, WGM "terminated Defendant Carlin's services." *Id*. ¶ 10. However, it did not change or revoke his login credentials. Nor did it take any other steps to restrict his electronic access to the shared folders in the WGM Dropbox. *See* Order dated Nov. 8, 2024 (Dkt. 93) at 1 n.1.

      On November 28, 2018, Carlin sued WGM in state court for legal fees owed to him. Compl. ¶ 11.[1] Two years later, on October 23, 2020, WGM filed this action, alleging that Carlin violated the Stored Communications Act and breached a common-law duty of care to his former client when he "accessed, viewed, added, edited, and/or deleted files and folders" within the WGM

---

[1] Carlin won. On February 24, 2022, the New York Supreme Court, New York County entered judgment in Carlin's favor in the amount of $708,581.90, and on January 10, 2023, the Appellate Division affirmed. *See Carlin v. William Gottlieb Mgmt. Co., LLC*, 212 A.D.3d 429, 429, 181 N.Y.S.3d 91, 92 (1st Dep't 2023), *leave to appeal denied*, 39 N.Y.3d 914, 210 N.E.3d 950 (2023).

Dropbox, using his WGM-authorized login credentials, at various times in 2019. Compl. ¶¶ 12-15.[2]

On June 21, 2024, Carlin filed an amended answer and counterclaim, alleging that he "uploaded" various files to the WGM Dropbox – both before and after October 24, 2018 – and that WGM "wrongfully detain[ed] the same." Countercl. (Dkt. 61 at ECF pp. 5-7) ¶¶ 1-4. On August 5, 2024, plaintiff moved to dismiss the counterclaim, arguing principally that it failed to state a cognizable common-law claim for replevin. (Dkt. 76.) On January 17, 2025, I recommended that the motion to dismiss be granted but that defendant be given 30 days to seek leave to amend. *See* Report and Recommendation (R&R) (Dkt. 100) at 10-11.

Neither party objected to the R&R. Instead, on February 18, 2025, defendant filed a motion for leave to amend his counterclaim pursuant to Fed. R. Civ. P. 15(a)(2) (Dkt. 101), supported by his declaration (Carlin Decl.) (Dkt. 102), which attaches a copy of his proposed Amended Counterclaim (Prop. Am. Countercl.) (Dkt. 102-1), and a memorandum of law (Def. Mem.) (Dkt. 106). On February 25, 2025, plaintiff filed an opposition memorandum (Pl. Opp.) (Dkt. 107), and on February 27, 2025, defendant filed a reply brief (Def. Reply) (Dkt.108). For the reasons that follow, defendant's motion will be granted.

I.  **BACKGROUND**

   A.  **Original Counterclaim**

In his four-paragraph original counterclaim, defendant alleged that he uploaded the following files (which he called "Carlin's Files"), on the following dates, to the following folders within the WGM Dropbox (which he called "his Dropbox"):

---

[2] Plaintiff's claims for breach of the Computer Fraud and Abuse Act and trespass to chattels were dismissed on March 26, 2024. (Dkt. 54.)

  (a)  Ten (10) files on or about September 12, 2018 to a folder titled "Gottlieb Accounting Matters";

  (b)  Approximately one hundred forty-three (143) files on or about July 14, 2018, including, but not limited to, twenty-three (23) files that were upload[ed] to a folder titled "Greenapple";

  (c)  Eighteen (18) files on or about August 11, 2019 to a folder titled "Carlin v. WGM";

  (d)  Two (2) files on or about August 11, 2019 to a folder titled "Gottlieb Accounting Matters";

  (e)  One (1) file titled "Document.docx" on or about August 11, 2019;

  (f)  Thirteen (13) files on or about August 15, 2019 to a folder titled "Carlin v. WGM."

Countercl. ¶ 1. Carlin then asserted, in conclusory terms, that he was "entitled to the immediate possession of [the files he uploaded]," but that WGM continued to "wrongfully detain the same[.]" *Id*. ¶¶ 2-3. He further alleged that on May 21, 2024 (more than four years after his last upload and more than three years after this action was filed), he demanded that WGM "return Carlin's Files," but it refused "and still refuses to deliver the same to defendant." *Id.* ¶ 4.

  In the Report and Recommendation issued on January 17, 2025, I concluded that although intangible property may be the subject of a claim for replevin in New York, *see* R&R at 7-8, defendant's counterclaim failed for two fundamental reasons. *Id*. at 8. First, the original counterclaim failed to plead "any *facts* showing that he 'has a possessory right to [the files] superior to that of [WGM],' or that he is 'entitled to the immediate possession of that property.'" R&R at 8 (quoting *Syl Consulting LLC v. Cmty. USA II LLC*, 2024 WL 340966, at *3 (S.D.N.Y. Jan. 30, 2024)). For example, Carlin did not disclose "who created the files that he uploaded to the WGM Dropbox, when they were created, the purpose for which they were created, or their contents." *Id.* at 3. Instead, he pled "naked conclusions" as to the elements of the cause of action, which is insufficient under well-settled federal pleading standards. *Id*. at 8-9.

3

Second, the original counterclaim failed to plead any facts showing that Carlin suffered "a concrete and particularized injury caused by [WGM] and redressable by the court," and thus that he had standing to sue. R&R at 9 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Specifically, defendant failed to show that he was injured by WGM's retention of the files that he voluntarily uploaded in 2018 and 2019, or by its failure to deliver those files to him when he requested that it do so in 2024. *Id.* at 3, 9.

### B.  Proposed Amended Counterclaim

In his 20-paragraph proposed amended counterclaim, defendant alleges that he created two Dropbox accounts – a personal Dropbox account, and a William Gottlieb Dropbox account (Carlin WGM Dropbox), both while serving as an attorney for plaintiff. Prop. Am. Countercl. ¶¶ 1-2. The Carlin WGM Dropbox was password-protected. *Id.* ¶ 2. Defendant alleges that on July 14, 2018, he intended to upload the following files from his password-protected laptop to his personal Dropbox but instead mistakenly uploaded them to the Carlin WGM Dropbox:

(a)  Approximately 120 files that he moved to a folder he created and titled "East End Kitchen" (East End Kitchen Files); and

(b)  Approximately 23 files that he moved to a folder he created and titled Greenapple (Greenapple Files) (together, the Uploaded Files).

*Id.* ¶¶ 3-5.

Carlin explains that he "uploaded the Uploaded Files for external storage purposes. He intended to store them in his personal Dropbox and not in his Carlin WGM Dropbox. When those files were uploaded, defendant had mistakenly been logged into his Carlin WGM Dropbox account instead of his personal Dropbox account. Defendant did not retain other copies, and does not have other copies, of the Uploaded Files." Prop. Am. Countercl. ¶ 5. Defendant adds that when he "mistakenly uploaded the Uploaded Files to the Carlin WGM Dropbox, he did not intend to provide plaintiff with possession of the Uploaded Files." *Id.* ¶ 14. Moreover, "[d]efendant

4

restricted access to the Uploaded Files on the WGM Dropbox to himself, individually, and never shared them with plaintiff or any third party." *Id*. ¶ 8.

The Greenapple Files are "confidential documents relating to [Carlin's] representation of a client between in or about 2010 and 2015," including attorney work product, an attorney-client privileged mediation statement, and private contracts of the client. Prop. Am. Countercl. ¶ 6. "Defendant either created or received the Greenapple Files during the course of his representation of this client." *Id*. The East End Kitchen Files are "confidential documents relating to his representation of a limited liability company owned by defendant's wife," including tax returns, IRS forms, and private contracts, created or received between in or about 2011 and 2016. *Id.* ¶ 7. Neither the Greenapple Files nor the East End Kitchen Files have any relationship to plaintiff. *Id.* ¶¶ 6-7.[3] Thus, defendant asserts, "Plaintiff's access to the content of the Uploaded Files would result in the disclosure of confidential and sensitive information relating to defendant's clients, including privileged attorney-client communications, and would also result in the delivery to plaintiff of defendant's work product that was prepared for clients other than plaintiff." *Id.* ¶ 13.

Carlin concludes, based on these facts, that his "rights to possess the Uploaded Files are superior to the possessory rights of plaintiff." Prop. Am. Countercl. ¶ 16. However, when he demanded the return of the files on May 21, 2024, WGM "refused and still refuses to deliver the

---

[3] Defendant notes that, although he did not include these facts in his original counterclaim, he has repeatedly explained them to WGM, to the state court (during the fee litigation) and to this Court. *See* Prop. Am. Countercl. ¶ 9. He further alleges that in September 2019, when WGM hired the NGH Group, Inc. (NGH) to "investigate the nature and extent of defendant's access to the Carlin WGM Dropbox," NGH "*verified that neither of the two (2) other Team Admin's had accessed any non-shared content of the Carlin WGM Dropbox as of that date*." *Id.* ¶ 10. Moreover, WGM implicitly recognized the confidential nature of the Uploaded Files by directing NGH "NOT to open, view or disseminate any of the content (files and folders) of the Carlin WGM Dropbox to any party outside NGH – including WGM and its counsel," *id*. ¶ 11, and confirmed to Carlin, as recently as August 12, 2024, that "we have not opened or viewed the files." *Id*. ¶ 12.

5

same to defendant." *Id*. ¶ 19.[4] Defendant concludes that WGM's continued "detention of the Uploaded Files invades defendant's legally protected common law interest in, and rights to, possess the Uploaded Files," and that this injury "will be redressed by granting defendant the relief sought herein." *Id*. ¶ 18. Defendant requests a judgment declaring that he is entitled to immediate possession of the Uploaded Files and directing plaintiff to immediately return the Uploaded Files to him, including "all copies thereof in its possession or under its control." *Id.* at 7.

## II.  LEGAL STANDARDS

Motions to amend should be "freely" granted, Fed. R. Civ. P. 15(a)(2), unless, *inter alia*, the amendment would be "futile," the movant has caused "undue delay" or acted in "bad faith," or the non-moving party would suffer "undue prejudice" as a result of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "While the party seeking to amend its pleading must explain any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'" *Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018) (quoting *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018)).

"Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed [pleading] fails to state a claim, the traditional Fed. R. Civ. P. 12(b)

---

[4] Defendant explains why he waited until 2024 to formally request the return of the Uploaded Files and assert a replevin claim as follows: "Prior to the filing of the initial Counterclaim in this action, defendant was reluctant to increase the litigation between the parties by filing a replevin action to recover possession of the Uploaded Files," but did so "to avoid potential waiver under the compulsory counterclaim provisions of Fed. R. Civ. P. 13(a) of his right to assert a replevin claim against plaintiff[.]" Prop Am. Countercl. ¶ 15; *see also* Def. Mem. at 5 (explaining that "he was reluctant to expand the legal disputes between the parties by asserting a replevin claim during the years of extensive – and consuming – litigation for his recovery of substantial legal fees in the State Court Action, followed by the ongoing need to defend against plaintiff's claims in this Court," but that he asserted this claim "[w]hen confronted with the potential waiver under Fed. R. Civ. P.13(a) of his replevin rights").

standard." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) (collecting cases). Under Rule 12(b)(6), the question for the court is whether the pleader has presented "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). Those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Thus, the courts will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

A motion for leave to amend may be granted by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), and the resulting order is reviewed only for "clear error." *Antipova v. Caremount Med. P.C.*, 2022 WL 17820862, at *2 (S.D.N.Y. June 16, 2022); *see also*, *e.g.*, *Muratovic v. Zavor Am., Inc.*, 2021 WL 8317106, at *2 n.2 (E.D.N.Y. Dec. 10, 2021) (collecting cases); *Partminer Info. Servs., Inc. v. Avnet, Inc.*, 2009 WL 1119588, at *1 (S.D.N.Y. Apr. 21, 2009) ("a grant of a motion for leave to amend is nondispositive," and "review under 28 U.S.C. § 636(b)(1)(A) is therefore appropriate"). "[U]nless the magistrate judge's decision effectively dismisses or precludes a claim, thereby rendering the motion to amend dispositive, motions for leave to amend are subject to review under the 'clearly erroneous or contrary to law' standard of Rule 72(a)." *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 319 n.1

(S.D.N.Y. 2024) (quoting *Ashford Locke Builders v. GM Contractors Plus Corp*, 2020 WL 6200169, at *1 (E.D.N.Y. Oct. 22, 2020)).

### III.  DISCUSSION

Under New York law, which applies in this diversity action, digital copies of electronic documents may be the subject of a replevin claim. *See* R&R at 7-8; *Syl Consulting*, 2024 WL 340966, at *3; *Salonclick LLC v. SuperEgo Mgmt. LLC*, 2017 WL 239379 (S.D.N.Y. Jan. 18, 2017). At issue here is whether defendant's proposed amended counterclaim sufficiently establishes (1) the elements of a replevin claim; and (2) a concrete and particularized injury giving him standing to sue. Plaintiff argues that defendant's proposed amended counterclaim establishes neither, and would thus be futile. Pl. Opp. at 1.

####    A.    **Plaintiff Plausibly Pleads the Elements of Replevin**

To state a claim for replevin under New York law, "the claimant must establish two elements: 1) that it has a possessory right to property superior to that of the party currently in possession of the property; and 2) that it is entitled to the immediate possession of that property." *Syl Consulting*, 2024 WL 340966, at *3. The subject of a claim for replevin must be a "specific, identifiable item of personal property." *HSCM Bermuda Fund Ltd. v. Newco Cap. Grp. VI LLC*, 619 F. Supp. 3d 434, 444 (S.D.N.Y. 2022) (internal quotation marks omitted) (quoting *Heckl v. Walsh*, 122 A.D.3d 1252, 1254, 996 N.Y.S.2d 413, 415 (4th Dep't 2014)). If the opposing party came into possession of the property "lawfully," the claimant must also show that he made a demand for the property, and was refused. *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 WL 5416498, at *7 (S.D.N.Y. Sept. 28, 2016).

Unlike his original, bare-bones counterclaim, Carlin's proposed amended pleading provides detailed factual allegations that plausibly support the necessary elements of a replevin claim. He now explains that the Uploaded Files comprise the Greenapple Files and the East End

8

Kitchen Files, none of which concern plaintiff. *Id.* ¶¶ 6-7. The Greenapple Files relate to defendant's representation of a client between 2010 and 2015, while the East End Kitchen Files relate to his representation of a company owned by his wife. *Id.* He further explains that he owns these files (or at least has a "superior possessory right" to them), in that he either created them himself or received them in the course of his representation of clients other than WGM, and uploaded them mistakenly from his personal laptop to the WGM Dropbox instead of his personal Dropbox, as intended. *Id.* ¶¶ 5-7. Further, he "restricted access to the Uploaded Files on the WGM Dropbox to himself, individually, and never shared them with plaintiff or any third party." *Id.* ¶ 8. Defendant further alleges – as required in light of his admission that it was he who uploaded the files in the first instance – that he "demanded that plaintiff return the Uploaded Files," almost one year ago, "but plaintiff refused and still refuses to deliver the same to defendant." *Id.* ¶ 19.

These allegations are sufficient to state a claim for replevin. *See Syl Consulting*, 2024 WL 340966, at *3 (defendant restaurant adequately stated a counterclaim for replevin by alleging that its former consultant refused to return control of the restaurant's domain name, website, and social media accounts); *Salonclick LLC*, 2017 WL 239379 (S.D.N.Y. Jan. 18, 2017) (plaintiff sufficiently pled a claim for replevin where the property at issue consisted of domain names and social media accounts); *Chefs Diet*, 2016 WL 5416498, at *7 (S.D.N.Y. Sept. 28, 2016) (plaintiff sufficiently pled a claim for replevin where the "property taken" included an electronic "customer list" that plaintiff voluntarily shared with defendant but that defendant failed to return after the parties' business relationship terminated).

Plaintiff argues that the proposed amended counterclaim "fails to address that WGM has an exclusive property right in the WGM Dropbox Account and any documents copied thereto by any previously or currently licensed user." Pl. Opp. at 2. In plaintiff's view, Carlin "had access, but

9

never any property right, to the WGM Dropbox Account or its contents while providing legal services to Plaintiff." *Id.* This argument – backed by nothing beyond WGM's opinion as to what its legal rights *should be* to the contents of the WGM Dropbox – is unavailing. As defendant notes in his Reply, it consists of "unsubstantiated allegations of ownership and exclusive property rights in the Uploaded Files" that are "extrinsic to the pleadings." Def. Reply at 2.

Next, plaintiff challenges defendant's factual allegation that the Uploaded Files listed in the proposed amended counterclaim have no relationship to plaintiff's business, writing that defendant "already admitted that at least some of the documents at issue are directly related to WGM." Pl. Opp. at 2. Once again, however, plaintiff provides no support for its claim, and defendant states that it has "no basis." Def. Reply at 2.[5] In any event, "[t]he purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the [counterclaimant's] statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). If defendant's factual allegations are inaccurate, plaintiff will have the opportunity to so demonstrate at the appropriate stage of the case.

Plaintiff also challenges Carlin's allegation that it refused his demand for the return of the Uploaded Files, asserting that it "already offered to return the files Carlin seeks in his replevin claim without directly accessing them." Pl. Opp. at 2. Specifically, plaintiff explains, it offered (during discovery) to produce paper copies of the Uploaded Files (and other contents of the WGM Dropbox), thereby "eliminating any of the concerns purported in Defendant's motion." *Id*. at 2-3. Instead of accepting this offer, Carlin replied, "I think production of a print-out of the

---

[5] Defendant does not seek replevin as to every file in the WGM Dropbox (or even as to all of the files identified in his original counterclaim). Instead, he seeks the return of the East End Kitchen Files and the Greenapple Files. Prop. Am. Countercl. ¶ 3; *see also id*. at 7.

directory/menu of the folders, reflecting the names of the files within those folders, as well a directory/menu of the files that are not contained in folders, would be sufficient." *Id.* at 4. According to plaintiff, it "provided these directories" to Carlin on August 12, 2024, but "has never received a response." *Id.*

These facts do not appear in the proposed amended counterclaim. Nor does plaintiff contend that they are judicially noticeable. Even more fundamentally, WGM misses the point. "Typically, the remedy in a replevin action is the *return* of the property," *Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*, 2005 WL 1262095, at *14 (E.D.N.Y. May 26, 2005) (emphasis added). Where, as here, the property is electronic – and the claimant's alleged injury flows from the accused party's continued possession of *any* copy of that property – "returning" the property does not mean merely making another copy, whether electronic or paper, for inspection pursuant to Fed. R. Civ. P. 34. *See Chef's Diet*, 2016 WL 5416498, at *7 (permitting replevin case to proceed to trial because "a trier of fact could find that Defendants were (and, indeed, continue to be) in possession of property as to which Chefs Diet claims to have a superior right – namely, the 2010 customer list"); *Jamison Bus. Sys.*, 2005 WL 1262095, at *22 (holding that, after prevailing at trial on their replevin claims as to certain computer programs, plaintiffs were entitled to an order directing defendants to "turn over to the plaintiffs" the programs at issue and prohibiting defendants from using any such programs themselves).

Here, Carlin alleges that on May 21, 2024, he asked WGM to "return" what he contended to be his electronic files. Prop. Am. Countercl. ¶ 19; *see also* Carlin Decl. Ex. B (Dkt. 102-2) (email, dated May 21, 2024, from Carlin to WGM, making demand for "the return to me by [WGM] . . . of the following folders and files" stored on the WGM Dropbox, including "23 files that were uploaded to a folder titled 'Greenapple'"). As Carlin explains in his moving memorandum

11

(and as WGM concedes in its own brief), "plaintiff's [later] offer to deliver copies of the Uploaded Files was for discovery purposes only," Def. Mem. at 4, and did not satisfy his demand that they be "returned." *See Samuels v. Greenberg*, 2015 WL 5657565, at *10 (E.D.N.Y. Sept. 23, 2015) (in the context a claim for replevin, "a refusal need only 'convey[ ] an intent to interfere with the demander's possession or use of his property'") (quoting *Feld v. Feld*, 279 A.D.2d 393, 395, 720 N.Y.S.2d 35, 37 (1st Dep't 2001)), *aff'd*, 646 F. App'x 38 (2d Cir. 2016). Consequently, I conclude that Carlin has adequately alleged all necessary elements of his replevin claim, including that he demanded the return of his property and was refused.

### B. Standing

To establish standing under the "cases and controversies" clause, *see* U.S. Const. art. III § 2, a plaintiff must demonstrate that he suffered a "concrete and particularized injury" as a result of the violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "While the standard for reviewing standing at the pleading stage is lenient," here too "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003).

Plaintiff's standing argument, as best the Court understands it, is that any injury sustained by defendant was his own fault and is therefore insufficient to invest him with standing to sue. Pl. Opp. at 2. Plaintiff begins by asking the Court to "take judicial notice" that "Dropbox, like any other service involving uploading to the internet, merely uploads a copy of the documents and does not (and cannot) destroy or otherwise alter the originals." *Id*. From this premise, plaintiff argues that if Carlin no longer has copies of the Uploaded Files, this "can only mean that he later deleted his copies," in which case he suffered "a self-inflicted injury that belies his conjectural 'injury.'" *Id*.

12

Plaintiff's unsourced assertion as to the effect of the computer programs used by Carlin to upload his files to Dropbox is not a "fact" of which this Court can take judicial notice. *See* Fed. R. Evid. 201(b). Moreover, Carlin clearly alleges that his injury arises not only from his loss of the Uploaded Files but also from WGM's continued access to them, which could "result in the disclosure of confidential and sensitive information relating to defendant's clients, including privileged attorney-client communications, and would also result in the delivery to plaintiff of defendant's work product that was prepared for clients other than plaintiff." Prop. Am. Countercl. ¶ 13.[6] As defendant explains in his moving brief, absent relief from this Court, "plaintiff will have the unfettered right to access the Uploaded Files upon the disposition of this action without the confidentiality constraints it has recognized during the pendency of litigation between the parties, thereby causing 'injury in fact' to defendant. This injury would be redressed by granting the relief sought by the Amended [Counterclaim], including the provision in the judgment requiring plaintiff to deliver all copies of the Uploaded Files to defendant." Def. Mem. at 4 n.3 (record citations omitted).

Defendant is correct. As in many replevin cases involving electronic files, the injury of which he complains – WGM's possession of and access to his confidential files – does not depend

---

[6] Carlin's concerns are supported by his more detailed factual allegations as to the contents of the Uploaded Files: The Greenapple Files, relating to his representation of a client between 2010 and 2015, include "(a) legal memoranda and other papers prepared by defendant during the course of representing the client, and as such, constitute defendant's work product which is not generally available to the public; (b) an attorney-client privileged confidential mediation statement prepared by Carlin exclusively for an alternative dispute resolution proceeding; and (c) private contracts of the client which are not known by, or generally available to, the public." Prop. Am. Countercl. ¶ 6. The East End Kitchen Files, relating to his representation of a company owned by his wife, include "sensitive financial and other business information, including, but not limited to tax returns, IRS forms containing personal identification information, and private contracts which are not known by, or generally available, to the public," created or received between 2011 and 2016. *Id.* ¶ 7.

13

on whether or not he retained his own copies of the same files. *See*, *e.g.*, *Sell It Social, LLC v. Strauss*, 2018 WL 2357261, at *7 (S.D.N.Y. Mar. 8, 2018) (permitting plaintiff to proceed on its replevin claim against a former employee who downloaded a "copy" of plaintiff's customer list to a flash drive); *Chefs Diet*, 2016 WL 5416498, at *7 (permitting plaintiff to proceed on its replevin claim against a former business partner that retained a copy of plaintiff's customer list after the business partnership dissolved); *Jamison Bus. Sys.*, 2005 WL 1262095, at *22 (ordering defendant to "turn over," to plaintiffs, "any computer programs in their possession that contain copyrighted elements of the plaintiffs' rental program").[7] Consequently, I conclude that the proposed Amended Counterclaim sufficiently establishes standing to sue for replevin.

## IV.   CONCLUSION

For the reasons set forth above, defendant's motion to amend his counterclaim (Dkt. 101) is GRANTED. Defendant must promptly file his Amended Counterclaim as a separate entry on ECF, at which point it will supersede the counterclaim portion of his Amended Answer and Counterclaim. Plaintiff's answer to the Amended Counterclaim is due 14 days thereafter. *See* Fed. R. Civ. P. 15(a)(3).

Dated: New York, New York
       May 6, 2025

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[7] The fact that the WGM has not yet reviewed or disclosed any "confidential and sensitive information relating to defendant's clients" does not undermine Carlin's standing to sue, particularly given that he seeks equitable relief – essentially, a turnover order – rather than damages. *See TransUnion*, 594 U.S. at 435 (Although the mere risk of future harm does not provide standing to seek retrospective damages where actual harm never materialized, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."); *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 285 (2d Cir. 2023) (even in a damages case, the "exposure of [plaintiff's] private PII to unauthorized third parties," as a result of a data breach, is "sufficiently concrete to support [plaintiff's] claims for damages").

14