**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/15/2025

WILLIAM GOTTLIEB MANAGEMENT CO., LLC,

                    Plaintiff,

          - against -

ALLAN H. CARLIN,

                    Defendant.

**20 Civ. 08907 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiff William Gottlieb Management Co., LLC ("WGM") alleges that Defendant Allan H. Carlin ("Carlin") improperly interfered with WGM's computer files. (<u>See</u> "Complaint" or "Compl.," Dkt. No. 1.) WGM brings claims for violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 <em>et seq.</em> and claims under New York common law for negligence. Plaintiff moves for partial summary judgment pursuant to Federal Rule of Procedure 56 ("Rule 56"). (<u>See</u> "WGM Mot.," Dkt. No. 111.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for partial summary judgment.

## I.    <u>Background</u>

Carlin, a New York-barred attorney, worked at times as legal counsel for WGM. (<u>See</u> "WGM SOMF," Dkt. No. 114, ¶ 1.) In the fall of 2017, WGM invited Carlin to join the "William Gottlieb team" Dropbox Professional account (the "WGM Dropbox"), a cloud-based file storage and sharing service. (<u>See</u> <u>id.</u>; <u>see</u> <u>also</u> "Carlin SOMF,"

Dkt. No. 126, ¶ 1.) Carlin accepted this invitation, which prompted him to create a Dropbox account. (See Carlin SOMF at ¶ 1.) Carlin created two accounts, a personal Dropbox account under the email address carlin.allan@gmail.com and a WGM Dropbox account under the email address allan.carlin@verizon.net. (See id.) On October 24, 2018, WGM terminated Carlin's legal services by letter. (See id. ¶ 2.)

After Carlin was terminated by WGM, he accessed the WGM Dropbox multiple times, using the username and password that he had received before he was terminated. WGM does not dispute that it did not change Carlin's password following his termination. (See WGM Mot. at 1). Specifically, Carlin accessed the WGM Dropbox on the following dates:

1) February 5, 2019: Carlin viewed three files titled "144 Barrow Daily report 1-25-19 reduced.pdf," "144 Barrow Daily report 1-23-19 reduced.pdf," and "144 Barrow Daily report 1-24-19 reduced.pdf" within the "Gottlieb Projects/144-150 barrow street llc/Daily Reports" folder in the WGM Dropbox. (See Declaration of Allan H. Carlin, Dkt. No. 125 [hereafter "Carlin Declaration" or "Carlin Decl."][1], 8; Carlin Decl., Ex. K, Dkt. No. 125-11, 5-6.)

---

[1] For the Carlin Declaration and supporting exhibits, the Court cites to the ECF page numbers.

2

2) March 30, 2019: Carlin deleted the file "Get Started with Dropbox Paper" in the WGM Dropbox. (See Carlin Decl., Dkt. No. 125, 8; Carlin Decl., Ex. K, Dkt. No. 125-11, 6.)

3) May 30, 2019: Carlin viewed the two files "144 Barrow Daily report 5-22-19 reduced.pdf" and "144 Barrow Daily report 5-29-19 reduced.pdf" in the "Gottlieb Projects/144-150 barrow street llc/Daily Reports" folder in the WGM Dropbox. (See id.)

4) August 11, 2019: Carlin created the "Carlin v. WGM" folder and added files to this folder. (See id.) On the same day Carlin also uploaded and edited two documents titled "Document.docx" and "Document(1).docx" in the "Gottlieb Accounting Matters" folder in the WGM Dropbox. (See Carlin Decl., Dkt. No. 125, 8; Carlin Decl., Ex. K, Dkt. No. 125-11, 6-7.) Carlin also uploaded a document titled "Document.docx" to the WGM Dropbox. (See Carlin Decl., Dkt. No. 125, 8; Carlin Decl., Ex. K, Dkt. No. 125-11, 7.)

5) August 15, 2019: Carlin uploaded files to the "Carlin v. WGM" folder in the WGM Dropbox. (See id.)

6) August 18, 2019: Carlin accessed the "Carlin v. WGM" folder to view files in the WGM Dropbox. (See Carlin Decl., Dkt. No. 125, 8; Carlin Decl., Ex. K, Dkt. No. 125-11, 7.)

7) August 19, 2019: Carlin accessed the "Carlin v. WGM" folder to view a file in the WGM Dropbox. (See id.)

3

8) <u>September 25, 2019</u>: Carlin accessed the "Carlin v. WGM" folder to view a file and/or folder in the WGM Dropbox. (<u>See</u> Carlin Decl., Dkt. No. 125, 8; Declaration of Nicholas G. Himonidis [hereafter "Himonidis Declaration" or "Himonidis Decl."], Ex. C, Dkt. No. 113-3, 3.)

9) <u>September 26, 2019</u>: Carlin accessed the "Carlin v. WGM" folder to view a file and/or folder in the WGM Dropbox. (<u>See</u> <u>id.</u>)

10) <u>September 27, 2019</u>: Carlin accessed the "Carlin v. WGM" folder to view a file and/or folder in the WGM Dropbox. (<u>See</u> <u>id.</u>)

11) <u>December 17, 2019</u>: Carlin accessed the "Carlin v. WGM" folder to view a file and/or folder in the WGM Dropbox. (<u>See</u> <u>id.</u>)

On September 27, 2019, WGM's counsel contacted Carlin and objected to Carlin's access to the WGM Dropbox. (<u>See</u> Carlin SOMF at ¶ 14.)

## II.  <u>Procedural History</u>

On October 23, 2020, WGM filed its Complaint against Carlin. (<u>See</u> Compl.) WGM brought claims for violations of the Computer Frauds and Abuse Act("CFAA"), 18 U.S.C § 1030, and the SCA, as well as claims under New York common law for trespass to chattels and negligence. (<u>See</u> <u>id.</u>) On March 22, 2021, a certificate of default was entered against Carlin. (<u>See</u> Dkt. No. 8.) While this

action was pending before Judge Paul A. Crotty, the court entered a default judgment on May 10, 2021. (See Dkt. No. 9.) On December 20, 2022, that court granted Carlin's motion to set aside the certificate of default and default judgment. (See Dkt. No. 28.)

After the default judgment was set aside, Carlin moved to dismiss all claims pursuant to Rule 12(b)(6) (see Dkt. No. 49) and filed a memorandum of law in support of his motion to dismiss (see Dkt. No. 51.) WGM filed a timely memorandum of law in opposition to the motion to dismiss (see Dkt. No. 52), and Carlin timely filed a memorandum of law in reply (see Dkt. No. 53.)

On March 15, 2025, this matter was reassigned to this Court. (See Dkt. entry on Mar. 15, 2024.) On March 26, 2024, this Court issued a Decision and Order (see Dkt. No. 54) granting the motion to dismiss as to the CFAA and trespass to chattels claims and denying the motion to dismiss for the SCA and negligence claims.

On April 16, 2024, Carlin filed an Answer (see Dkt. No. 55) in response to WGM's complaint. On June 21, 2024, Carlin filed an Amended Answer to the Complaint and a Counterclaim (the "Counterclaim"). (See Dkt. No. 61.) On May 15, 2025, WGM filed a motion for partial summary judgement. (See Dkt. No. 111.) On June 16, Carlin filed his opposition (See Dkt. No. 126). On June 30, WGM filed its reply brief in further support of its motion for partial summary judgement. (See Dkt. No. 132.)

Following briefing on the Counterclaim by both parties, on July 31, 2025, the parties signed a stipulation of voluntary dismissal of Carlin's counterclaim. (See. Dkt. No. 136.) On August 6, 2025, the Court granted the parties' request to voluntarily dismiss Defendant's counterclaim pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and (c). (See Dkt. No. 137.) The motion for partial summary judgement is now fully briefed and ripe for decision.

### III. **Legal Standard**

WGM moves for summary judgment under Rule 56. Rule 56 provides that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the district court must construe "facts in the light most favorable to the non-moving party and resolv[e] ambiguities and draw[] all reasonable inferences against the moving party." United States v. Astrup, No. 23-847, 2024 WL 3101120 (2d Cir. 2024).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." New York v. Mountain Tobacco Co., 942 F.3d 536, 541 (2d Cir. 2019) (quoting Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Loreley Fin. (Jersey) No. 3 Ltd. v. Wells

Fargo Sec., LLC, 13 F.4th 247, 259 (2d Cir. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48. A party opposing summary judgment "must provide more than conclusory allegations," Gorzynski v. JetBlue Airways, Corp., 596 F.3d 93, 101 (2d Cir. 2010), and must support its position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(B).

However, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kee v. City of New York, 12 F.4th 150, 166–67 (2d Cir. 2021) (quoting Kaytor v. Electric Boat Corp., 609 F.3d 537, 545

(2d Cir. 2010)). Thus, summary judgment is improper if any evidence in the record allows a reasonable inference to be drawn in favor of the opposing party. See id. at 158.

### IV.  Discussion

WGM moves for partial summary judgment on its claims against Carlin under the SCA and New York common law for negligence. The Court grants summary judgment for WGM on some of the SCA claims, as the Court finds that Carlin intentionally and without authorization accessed the WGM Dropbox in violation of the SCA on December 17, 2019. On the negligence claims, the Court denies summary judgment for WGM, finding that for certain claims no duty existed and that for other claims there remain genuine disputes of material facts.

A. STORED COMMUNICATIONS ACT

Civil liability under the SCA extends to whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system[.]" 18 U.S.C. § 2701(a); see also id. § 2707(a) (expressly permitting any "person aggrieved by any violation of [the SCA]" to bring a civil action against the "person or entity" that engaged in such violation).

8

The SCA provides two exceptions for liability: (1) where the individual's conduct was authorized "by the person or entity providing a wire or electronic communications service" and (2) where the individual's conduct was authorized "by a user of that service with respect to a communication of or intended for that user[.]" Id. § 2701(c)(1)-(2).

WGM contends that Carlin's access to the WGM Dropbox after WGM terminated his legal services was unauthorized. (See WGM Mot. at 1.) In response, Carlin asserts that his access to the Dropbox was authorized and that the SCA's requirement of intent has not been met. (See "Carlin Opp.," Dkt. No. 127 at 9-19.) Carlin further argues that his access to the WGM Dropbox, even if not authorized by WGM, falls under 18 U.S.C. § 2701(c)(1) and (2)'s exceptions to liability for users authorized by the electronic services provider and for accessing communications intended for or owned by the user. (See id. at 19-22.)

Carlin does not dispute that he accessed the WGM Dropbox, nor does he dispute that the WGM Dropbox qualifies as a "facility through which an electronic service is provided." 18 U.S.C. § 2701(a)(1). Because Carlin contests two of the necessary elements of an SCA claim under 18 U.S.C. § 2701, specifically the mens rea and unauthorized access elements, the Court begins by addressing whether those elements have been met. Regarding mens rea, the Court finds that while Carlin's conduct demonstrated the intent

9

necessary to give rise to an SCA violation when he accessed the WGM Dropbox on December 17, 2019, there is a genuine dispute of material fact if he had the necessary mens rea on the other dates he is alleged to have accessed the WGM Dropbox. As it relates to authorization, the Court finds that Carlin accessed the WGM Dropbox on December 17, 2019, without authorization. The Court then addresses Carlin's arguments that his access to the Dropbox falls under the two exceptions for liability set forth in 18 U.S.C. § 2701(c). For reasons discussed further below, the Court rejects both exceptions to liability as inapplicable in this case.

   a. Mens Rea

   In civil actions, the SCA requires that the acts were committed "with a knowing or intentional state of mind." 18 U.S.C. § 2707(a). The SCA was enacted as part of the Electronic Communications and Privacy Act ("ECPA") of 1986. See Veksler v. Wipro, LLC, No. 22 Civ. 6118, 2025 WL 448041, at * 3 (S.D.N.Y. Feb. 10, 2025). Courts have interpreted "intentionality" in the ECPA as having the "same meaning" as the requirement of intentional conduct found in the SCA. Id. In the ECPA context, and thus the SCA context as well, courts have interpreted intentionality as "'narrower than the dictionary definition,' and to require that 'conduct or the causing of the result must have been the person's conscious objective.'" Id. (quoting Butera & Andrews v. Int'l Bus. Machs. Corp., 456 F. Supp. 2d 104, 109 (D.D.C. 2006)). "[T]he

10

plaintiff in an SCA claim must prove that the defendant knew that he or she was not authorized to access the facility in question or knew that the access exceeded his or her authorization." Meyer v. Mittal, No. 21 Civ. 00621, 2023 WL 3004761, at *10 (D. Or. Apr. 17, 2023). Therefore, to satisfy the SCA's mens rea requirement, WGM must show that Carlin had the "conscious objective" to access the WGM Dropbox without authorization. Veksler, 2025 WL at * 3.

WGM states that Carlin's access was intentional, and that he admitted in a deposition that he knew he was "prohibited" from accessing the WGM Dropbox. (See WGM Mot. at 7.) Carlin claims he did not have the necessary mens rea because he did not know that he was not authorized to access the WGM Dropbox after his termination. (See Carlin Opp. at 11-14.) Carlin also disputes WGM's characterization of his deposition testimony as misleading. The full deposition testimony of the relevant exchange is as follows:

"Q: And did there come a time that you chose to disconnect the two accounts?

A: "No I – I was – I was prohibited by you from having my access to the William Gottlieb Account.

Q: Me? You mean as a lawyer? What do you mean me?

A: By Your Office. You – you objected, so I – I – except for doing what I absolutely had to in order to protect my legal position, I was not going to make any further changes or do anything to affect those accounts"

11

(Declaration of Andrew Clark, Ex. 2, Dkt. No. 112-2, Part I of Allan Carlin's Deposition Transcript, 41:19-42:7.)

Carlin states that "plaintiff's counsel contacted him late on September 27, 2019 and objected to his access to the WGM Dropbox" and that "[p]laintiff did not revoke [his] permission to access to the WGM Dropbox, [or] take any other action to prevent such action, prior to that September 27, 2019 phone call." (Carlin Opp. at 17-18). As evidence that Carlin did not understand his access to the WGM Dropbox was "prohibited" by WGM until the September 27, 2019, phone call from WGM's counsel, Carlin points to filings he made in a state court case for unpaid legal fees between himself and WGM. (See id. at 12-13.) In those filings in the New York State Supreme Court, County of New York on January 2, 2020, Carlin states that "[m]y rights to access my [WGM] Dropbox existed at all times, both before and after the termination of my engagement" and that "[t]he termination of my engagement with [WGM] did not terminate my rights to access my Dropbox." Id.

At a minimum Carlin knew by September 27, 2019, that his access had been explicitly prohibited by WGM. On September 27, 2019, WGM's counsel contacted Carlin specifically objecting to Carlin accessing the WGM Dropbox. (See Carlin SOMF at ¶ 14.) In Carlin's own words he understood by this point that he was "prohibited . . . from having any access to the William Gottlieb

account." (Id.) However, even though Carlin at that point clearly understood that his access was "prohibited," he still accessed the WGM Dropbox account again on December 17, 2019, "to protect my legal position." (Id. at ¶ 14.)

Therefore, by Carlin's own admission, he knew he was "prohibited" from accessing the WGM Dropbox by September 27, 2019, yet he still accessed the WGM Dropbox on December 17, 2019. (Id.) Such clear unauthorized access in the face of WGM's explicit objections shows that Carlin intentionally accessed the WGM Dropbox with full knowledge that such access was unauthorized by WGM. Therefore, for the access to the WGM Dropbox on December 17, 2019, Carlin had the necessary mens rea to establish an SCA violation.

However, while Carlin had the necessary mens rea when he accessed the WGM Dropbox on December 17, 2019, there is a genuine dispute as to whether Carlin had the same required mens rea on the other dates he accessed the WGM Dropbox. It is unclear from Carlin's deposition testimony if he understood he was "prohibited" from accessing the WGM Dropbox before WGM's counsel contacted him on September 27, 2019. Id. WGM has not provided clear evidence that Carlin understood his access to the WGM Dropbox on February 5, 2019, March 30, 2019, May 30, 2019, August 11, 2019, August 15, 2019, August 18, 2019, August 19, 2019, September 25, 2019, September 26, 2019, and September 27, 2019, was unauthorized. Thus,

13

while the mens rea element for an SCA violation is met for Carlin's access of the WGM Dropbox on December 17, 2019, the Court is not persuaded that the intentionality element was satisfied as regards to the alleged SCA violations on the other dates listed above.

Because Carlin demonstrated the mens rea necessary to establish an SCA violation on December 17, 2019, the Court will analyze whether his access to the WGM Dropbox on that date was authorized.

### b. Authorization

The SCA prohibits unauthorized access to electronic communications. See 18 U.S. Code § 2701. An individual can violate the SCA by either accessing an electronic communication without any authorization, or by exceeding the scope of the authorization that they possess. See id. "When interpreting the SCA, courts often rely on interpretations of the Computer Fraud and Abuse Act ('CFAA'), 18 U.S.C. § 1030." Meyer, 2023 WL 3004761 at *7. Courts have held that the phrases "without authorization" and "exceeds authorization" under the SCA should be interpreted in the same manner as the phrases "without authorization" and "exceeds authorization" under the CFAA. hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th 1180, 1200 (9th Cir. 2022); see also Abu v. Dickson, 107 F.4th 508, 520-21 (6th Cir. 2024). In the context of the CFAA, the Supreme Court in Van Buren stated that the "without authorization" clause of the CFAA refers to whether "one either can or cannot

14

access a computer system," and the "exceeds authorization" clause refers to whether "one either can or cannot access certain areas within the system." 593 U.S. 374, 376 (2021).

Here, the parties dispute whether Carlin's termination as legal counsel for WGM also terminated his authorization to access the WGM Dropbox. Thus, the issue turns on whether Carlin's post-termination access was unauthorized, rather than whether he exceeded the scope of a still existing authorization by using the WGM Dropbox. WGM claims that Carlin's termination ended his authorization to access the WGM Dropbox. (See WGM Mot. at 1.) WGM argues that once they terminated Carlin's services on October 24, 2018, "any authorization Carlin previously had to access [WGM's] Dropbox account and files ceased." (See id. at 4.)

Numerous courts in this District have, in the context of CFAA claims by employers against former employees, "observed that 'where an employee has certain access to a computer or system associated with her job, that access will be construed as unauthorized within the meaning of the CFAA only where it occurs after the employee is terminated or resigns.'" KCG Holdings, Inc. v. Khandekar, No. 17 Civ. 3533, 2020 WL 1189302, at *15 (S.D.N.Y. Mar. 12, 2020) (quoting Poller v. BioScrip, Inc., 974 F. Supp. 2d 204, 233 (S.D.N.Y. 2013); see also Sell It Soc., LLC v. Strauss, No. 15 Civ. 970, 2018 WL 2357261, at *3 (S.D.N.Y. Mar. 8, 2018); Apple Mortg. Corp. v. Barenblatt, No. 13 Civ. 9233, 162 F. Supp.

15

3d 270, 287 (S.D.N.Y. Feb. 16, 2016) (denying defendants' summary judgment motion on a CFAA claim where there was evidence that the former employees had accessed emails from the employer's system after they had resigned). Other courts in this Circuit and beyond have also taken a similar approach. See Zap Cellular, Inc. v. Weintraub, No. 15 Civ. 6723, 2022 WL 4325746, at *7-8 (E.D.N.Y. Sept. 19, 2022) ("Clearly, a CEO or any employee can have authorization to access the company's computers and servers while working there, but lose that authorization upon being terminated from the company . . . [C]ourts have accepted this theory of liability and have found terminated employees liable under the CFAA for accessing computers that they were previously authorized to access."); see also LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1136 (9th Cir. 2009) ("There is no dispute that if Brekka accessed LVRC's information . . . after he left the company . . . Brekka would have accessed a protected computer 'without authorization' for purposes of the CFAA.").

Carlin claims that because WGM did not explicitly revoke his access and did not restrict his access by technical means, such as changing the password to his WGM Dropbox account, his authorization to access the WGM Dropbox never ended. (See Carlin Opp. at 15-18.) Carlin argues that the Court should adopt a more restrictive approach used by some other courts that would require a plaintiff to "show that access was 'restricted by technical means or by

16

[some] express limitation'" to prove the access was unauthorized. Genworth Fin. Wealth Mgmt., Inc. v. McMullan, No. 09 Civ. 1521, 2012 WL 1078011, at *14 (D. Conn. Mar. 30, 2012) (quoting Sherman & Co. v. Salton Maxim Housewares, Inc., 94 F. Supp. 2d 817, 821 (E.D. Mich. 2000)).

The SCA, like the CFAA, "says nothing about technical means of granting or preventing access." Cloudpath Networks v. Securew2 B.V., No. 15 Civ. 485, 157 F. Supp. 3d 961, 984 (D. Colo. Jan. 13, 2016). Therefore, the Court will not read into the SCA any additional requirements for technical restrictions or notice that the statute does not itself require.

While it would have been prudent for WGM to immediately restrict Carlin's access to its electronic systems by changing his password, the Court will not penalize them for not doing so. In United States v. Steele, the United States Court of Appeals for the Fourth Circuit came to a similar conclusion in a CFAA case where the defendant continued logging into his former employer's server after he resigned, using an "account he had used while working for [the employer]." 595 F. App'x 208, 209-10 (4th Cir. 2014). The Fourth Circuit stated that "the fact that [the defendant] no longer worked for [the former employer] when he accessed its server logically suggests that the authorization he enjoyed during his employment no longer existed." Id. The Fourth Circuit found that "[j]ust because [the former employer] neglected

17

to change a password on [the defendant's] [] account does not mean [the former employer] intended for [the defendant] to have continued access to its information." Id. Similar to Steele, Carlin used the same login information he used when he was legal counsel for WGM. That he was able to continue using the same login information after WGM terminated his services does not mean Carlin's access was still authorized.

Carlin argues that the Court should not use common law principles to interpret authorization under the SCA. (See Carlin Opp. at 14-15.) Carlin's arguments regarding common law are not convincing. Here the Court is not resting its decision on common law principles, but common sense. Once a counsel's legal services have been terminated by a client, that counsel should not reasonably expect continued authorization to access and benefit from the former client's electronic resources.

Because Carlin's legal services were terminated by WGM on October 24, 2018, his subsequent access to the WGM Dropbox was unauthorized.

c. Exceptions to Liability

As stated above, there are two exceptions to liability under the SCA. The first exception relates to access authorized by service providers. Under this exception there is no liability for access authorized "by the person or entity providing a wire or electronic communications service." 18 U.S.C. § 2701(c)(1) ("§

18

2701(c)(1)"). The exception applies to "all searches by communications service providers." <u>Fraser v. Nationwide Mut. Ins. Co.</u>, 352 F.3d 107, 115 (3d Cir. 2003). The exception is intended to allow the provider to "access the electronic communications without fear of liability." <u>ACW Flex Pack LLC v. Wrobel</u>, No. 22 Civ. 6858, 2023 WL 4762596, at *9 (N.D. Ill. July 26, 2023).

The second exception applies to conduct authorized by a user of the service. Under this exception no liability attaches to access authorized "by a user of an electronic communications service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(2) ("§ 2701(c)(2)"). A "user" is defined as "any person or entity who . . . uses an electronic communication service . . . and [] is duly authorized by the provider of such service to engage in such use." 18 U.S.C.A § 2510(13). § 2701(c)(2) creates an "exception for access authorized by authors and intended recipients of electronic communications." <u>In re DoubleClick Inc. Privacy Litig.</u>, No. 00 Civ. 641, 154 F. Supp. 2d 497, 509 (S.D.N.Y. Mar. 28, 2001). "Under [this] exception, 'a 'user' of the service can authorize a third party's access to the communication.'" <u>ACW Flex Pack</u>, 2023 WL at *9 (quoting <u>Konop v. Hawaiian Airlines, Inc.</u>, 302 F.3d 868, 880 (9th Cir. 2002)).

i. Exception Under § 2701(c)(1) Applying to Conduct Authorized by Service Provider

Carlin alleges that his access to the WGM Drobox on certain dates falls under the § 2701(c)(1) exception to liability because the communications were authorized by Dropbox as a service provider. Specifically, Carlin argues that his access to the WGM Dropbox on February 5, 2019, and May 30, 2019, was authorized because Dropbox sent him emails alerting him to changes in "his shared folders." (Carlin Opp. at 20-22.) Carlin's argument continues that because Dropbox is the provider of the "electronic communication service" under § 2701(c)(1), the emails that Dropbox sent to Carlin authorized him to access the documents linked in the messages. (See id.) While the parties do not dispute that Dropbox is a provider of an electronic communications service, they do dispute whether Dropbox's emails provided Carlin with authorization to access the WGM Dropbox.

The Court rejects Carlin's argument that the § 2701(c)(1) service provider exception applies in this action. As WGM points out, the emails that Dropbox sent to Carlin were only automated notifications of activity by WGM users on documents inside of WGM's Dropbox account. (See WGM Mot. at 6-7.) Dropbox would not have sent these activity alerts to Carlin via email, except that WGM had at one point authorized Carlin's access to the WGM Dropbox when he was their legal counsel. However, when Carlin received the automated emails on February 5, 2019, and May 30, 2019, he had

20

long since been terminated as WGM's counsel and therefore lacked WGM's authorization to access the WGM Dropbox.

Since Carlin received these automated emails only because he did not unlink his personal email from the WGM Dropbox account, the Court does not interpret these automated emails as reflecting Dropbox's intent to grant Carlin authorization to access the files in WGM's Dropbox account. Neither Carlin nor the Court has identified any case applying the exception under § 2701(c)(1) where an electronic service provider like Dropbox, sent an automated message to the former employee or former counsel of a company that employs the electronic provider's services. The Court thus rejects Carlin's novel attempt to use this exception.

That these automated emails do not fit under the service provider exception is made clear by looking at how the § 2701(c)(1) provision is typically applied to allow a company to access its own servers. This exception is meant to allow the service provider to "access the electronic communications without fear of liability." ACW Flex Pack, 2023 WL at *9. Usually, the provider is an employer, with this exception allowing employers to access an employee's email on a company server. See Fraser, 352 F.3d at 115 (the court concluded that because the plaintiff employee's e-mail was stored on the defendant employer's system, which the employer administered, the defendant's search of that email fell within the exception to liability); see also Bohach v. City of Reno, 932 F.

21

Supp. 1232, 1236 (D. Nev. 1996) (the court determined the exception applied since the defendant City was the provider of the electronic communications service and, as the provider, it could access communications as it wished). Here, Dropbox is an electronic service provider. The exception would normally apply to allow Dropbox to access electronic communications and data stored on Dropbox without liability, and thus to not allow a former counsel to access the Dropbox folder of his former client because of automated email notifications.

 ii. Exception Under § 2701(c)(2) Regarding Conduct Authorized by
     a User

The second SCA exception from liability covers "conduct authorized . . . by a user of that service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(2). A "user" is defined as "any person or entity who — (A) uses an electronic communications service; and (B) is duly authorized by the provider of such service to engage in such use." 18 U.S.C. § 2510(13). Courts have found that this exception allows "intended recipients of wire and electronic communications to authorize third parties to access those communications." Konop, 302 F.3d at 879.

Here Carlin alleges that on certain dates he accessed the WGM Dropbox to upload personal files or to access those personal files. (See Carlin Opp. at 19-20.) Carlin claims that on these dates he

was protected from liability by § 2701(c)(2) because the communications were intended for him (See id.) Thus, Carlin claims his access to his personal files uploaded to the WGM Dropbox account did not violate the SCA based on § 2701(c)(2) because the files he uploaded and accessed in the WGM Dropbox were intended for him. (See id.)

Carlin's argument fails because he is not an authorized user that can be protected from liability by § 2701(c)(2). § 2701(c)(2) applies only to "users," as defined by 18 U.S.C. § 2510(13). Users as defined by that provision must be "duly authorized" by the provider of such a service. Here, Carlin was not authorized to engage in using the WGM Dropbox account for any use, personal or otherwise, following his termination as WGM's counsel. Therefore, because Carlin was not authorized to use the WGM Dropbox following his termination, he cannot rely on the exception to liability provided by § 2701(c)(2).

Further, the point of this exception is to allow a "'user' of the service [to] authorize a third party's access to the communication." Konop, 302 F.3d at 880. Just because Carlin was accessing his own documents that he uploaded to the WGM Dropbox does not mean that his access to the WGM Dropbox was allowed for such a purpose. Carlin cannot simply grant himself authorization

23

to upload and access personal files in the WGM Dropbox that he was no longer authorized to access after his termination.

B. STATE LAW NEGLIGENCE CLAIM

WGM also alleges that Carlin was negligent when he used WGM's Dropbox after his termination. (See WGM Mot. at 7-8.) WGM alleges that Carlin had "ongoing professional duties" as WGM's former lawyer, which included a duty of confidentiality and duty of loyalty. (Id.) WGM also alleges that Carlin had "duties under the SCA not to access the account without authorization and a general common law duty not to access private computer systems without permission." (Id.) WGM claims that Carlin violated these duties by accessing the WGM Dropbox account without authorization, thereby causing WGM to be "injured financially." (Id.)

Carlin argues that he did not breach any duty and that, even if WGM could show he breached a duty, WGM failed to prove that such access proximately caused WGM's alleged injuries. (See Carlin Opp. at 23-25.) Specifically, Carlin argues he did not breach a duty of care under the SCA or any common law duty not to access a "private computer system." (Id.) Additionally, Carlin argues that WGM failed to specify Carlin's violation of any ethical violations under the New York Code of Professional Responsibility. (Id.)

"It is well-settled that to establish a claim of negligence, a plaintiff must prove: a duty owed to the plaintiff by the

24

defendant, a breach of that duty, and injury proximately resulting therefrom." Moore Charitable Found. v. PJT Partners, Inc., 217 N.E.3d 8, 14 (N.Y. 2023). "The existence of a duty is an essential element of a negligence claim because, '[i]n the absence of a duty, as a matter of law, no liability can ensue.'" Farash v. Cont'l Airlines, Inc., 574 F. Supp. 2d 356, 367 (S.D.N.Y. May 23, 2008), aff'd, 337 F. App'x 7 (2d Cir. 2009) (quoting McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997)).

a. Existence of a Duty

WGM alleges that Carlin owed ongoing professional duties to WGM, including the duty to protect client confidences and to not act adversely to a former client using information Carlin obtained during his representation. (See WGM Mot. at 7-8.) WGM also alleges that Carlin had duties under the SCA not to access the WGM Dropbox without authorization and a general common law duty not to access private computer systems without permission. (See id.)

"Attorneys owe fiduciary duties of both confidentiality and loyalty to their clients." AVRA Surgical, Inc. v. Dualis MedTech GmbH, No. 13 Civ. 7863, 2014 WL 2198598, at *4 (S.D.N.Y. May 27, 2014) (quoting Tekni-Plex, Inc. v. Meyner & Landis, 674 N.E.2d 663, 666 (N.Y. 1996). The Second Circuit made clear in In re "Agent Orange" Prod. Liability Litig., 800 F.2d 14 (2d Cir. 1986), that "an attorney owes a duty of loyalty to his client" and that "[t]hese obligations do not necessarily end when the attorney-

25

client relationship ends." 800 F.2d 14, 17 (2d Cir. 1986); see also United States v. Yannotti, 04 Crim. 690, 358 F. Supp. 2d 289, 295 (S.D.N.Y. Dec. 20, 2004) ("[A]n attorney's duties of loyalty and confidentiality to his clients remain in force after the termination of the attorney's retainer.").

Rule 1.9 of the Rules of Professional Conduct ("Rule 1.9") promulgated by the New York State Unified Court System identifies a lawyer's duty to former clients. Under this rule, "[a] lawyer who has formerly represented a client in a matter . . . shall not thereafter: (1) use confidential information of the former client . . . to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client . . . or (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client." 22 NYCRR Part 1200, Rule 1.9(c).

WGM alleges that Carlin "owed ongoing professional duties" to WGM. (WGM Mot. at 8.) Since WGM is the former client of Carlin, ongoing professional duties of loyalty and confidentiality as described by Rule 1.9 apply.

WGM also alleges that Carlin had a duty under the SCA not to access the WGM Dropbox without authorization and a general common law duty not to access private computer systems without permission. The parties have not cited, and the Court has not identified, any

26

New York case standing for the proposition that there is a common law duty not to access a private computer system or a duty not to violate the SCA. Thus, the Court will not find here that there is such a duty. Because the Court does not identify a negligence-based duty under the SCA or common law to not access a private computer system, a negligence claim cannot be supported by these duties. The Court will next look at whether Carlin breached his professional duties of loyalty and confidentiality.

b. <u>Breach of Carlin's Duties of Loyalty and Confidentiality</u>

WGM alleges that Carlin breached the duty of loyalty and confidentiality by accessing WGM's private files for his own personal and adverse purposes after WGM's termination of his services. (See "WGM Reply," Dkt. No. 132, 4-5.) Carlin argues that WGM failed to specify any violation of ethical obligations under the New York Code of Professional Conduct and that there is "no evidence that Carlin ever disclosed client confidences or acted adversely to plaintiff's interests by using information obtained during the course of representation in violation of ethical obligations." (Carlin Opp. at 23-25.)

Under Rule 1.9, confidential information shall not be used "to the disadvantage of the former client, except as these rules would permit." 22 NYCRR Part 1200, Rule 1.9(c)(2). Rule 1.6 of the Rules of Professional Conduct ("Rule 1.6"), which pertains to confidentiality of information, allows a lawyer to "use

confidential information to the extent that the lawyer reasonably believes necessary" to "establish or collect a fee." 22 NYCRR Part 1200, Rule 1.6(b)(5)(ii). Carlin alleges that he accessed the WGM Dropbox in part to defend his legal position in a state court case against WGM over unpaid legal fees (See Carlin SOMF at ¶ 4.) Thus, the Court finds that there is a factual dispute as to whether Carlin's access violated any ongoing professional duties he owed to WGM. In the record before it the Court finds that genuine disputes as to material fact exist regarding whether Carlin's access to WGM's Dropbox as detailed above violated his ongoing professional duties. Because of such disputes Court denies summary judgment as it relates to these claims.

### V.    <u>Order</u>

For the reasons explained above, it is hereby

**ORDERED** that the motion for partial summary judgment filed by plaintiff William Gottlieb Management Co., LLC ("WGM") (Dkt. No. 111) is **GRANTED** as to WGM's SCA claim for a violation on December 17, 2019, and is **DENIED** as to WGM's SCA claim for violations on February 5, 2019, March 30, 2019, May 30, 2019, August 11, 2019, August 15, 2019, August 18, 2019, August 19, 2019, September 25, 2019, September 26, 2019, and September 27, 2019, and denied as well as to  WGM's negligence claim; and it is further

**ORDERED** that the parties shall submit a joint letter within fourteen (14) days of the date of this Decision and Order

indicating (1) the parties' availability for a bench trial in 2026, (2) the anticipated length of trial, and (3) a proposed pretrial schedule in accordance with the Court's Individual Trial Practices.

**SO ORDERED.**

Dated:     15 December 2025
           New York, New York

Victor Marrero
U.S.D.J.

29